UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
EDMUND MURPHY III, Individually and
On Behalf of All Others Similarly Situated,

                Plaintiff,                                  MEMORANDUM AND ORDER
                                                                     17-CV-3084

   - against –


JBS S.A., WESLEY MENDONÇA BATISTA,
GILBERTO TOMAZONI, and JOESLEY
MENDONÇA BATISTA,

                Defendants.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiffs bring this consolidated putative class action against JBS S.A. ("JBS") and three of its executives—Wesley Mendonça Batista, Gilberto Tomazoni, and Joesley Mendonça Batista (the "Individual Defendants" and, together with JBS, the "Defendants")—alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5. Before the Court are competing motions for appointment as lead plaintiff and approval of counsel. Jack Mac Phail Revocable Living Trust and Philipp Kreuser ("Mac Phail Trust and Kreuser") have moved to be appointed co-lead plaintiffs and for the Court to approve their selection of The Rosen Law Firm, P.A. ("The Rosen Law Firm") and Bronstein, Gewirtz & Grossman, LLC ("BG&G") as co-lead counsel. GWI Enterprise Ltd. ("GWI Enterprise") has moved to be appointed sole lead plaintiff and for the Court to approve its selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as sole lead counsel. The Court heard oral argument on these motions on September 19, 2017. For the reasons that follow, GWI Enterprise's motion is granted, and Mac Phail Trust and Kreuser's motion is denied.

1

**BACKGROUND**

This case is a putative securities class action that arises from allegations of false and misleading statements by JBS and three of its executives, the Individual Defendants, in violation of federal securities laws. Two such securities class actions were filed in this district. *GWI Enterprise Ltd.* v. *JBS S.A. et al.*, No. 1:17-cv-4019 (E.D.N.Y. July 6, 2017); *Murphy III* v. *J.B.S. S.A. et al.*, No. 1:17-cv-3402 (E.D.N.Y. May 22, 2017). By order of this Court, the two actions were consolidated on August 14, 2017. ECF 12.

**I. Substantive Allegations**

JBS is a Brazilian company that processes and sells beef, lamb, pork, and chicken products within Brazil and internationally. ECF 1 ("Compl.") ¶ 7. The Complaint proposes a class consisting of all persons other than Defendants who acquired American Depository Receipts ("ADRs") from JBS from June 2, 2015 through May 19, 2017 (the "Class Period"). *Id.* ¶ 1. Plaintiffs allege that, throughout the Class Period, JBS and the Individual Defendants made false or misleading statements and/or failed to disclose that (1) JBS executives bribed regulators and politicians to subvert food inspections of its plants and overlook unsanitary practices, such as processing rotten meat and running plants with traces of salmonella; (2) Defendant Joesley Mendonça Batista was providing monthly bribery payments to a former Brazilian government official and a lobbyist; (3) there were irregularities in the loans JBS received from Brazilian state-owned development bank BNDES; (4) JBS and other entities controlled by Defendants Wesley Mendonça Batista and Joesley Mendonça Batista made suspicious trades that exhibit signs of possible insider trading prior to the revelation of a plea deal by JBS's top executives; and (5) as a result, Defendants' statements about JBS's business, operations, and prospects were materially false and misleading and lacked a reasonable basis at all relevant times. *Id.* ¶ 28. According to

the Complaint, when the truth emerged, the market value of JBS ADRs precipitously declined, causing class members to suffer losses. *Id.* ¶ 40. The Complaint alleges that the foregoing conduct by the Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 and that the Individual Defendants are also liable as control persons under Section 20(a) of the Exchange Act. *See* Compl. ¶¶ 50-65. The Complaint also specifically alleges that, to prove the reliance element of their claims, plaintiffs will rely on the presumption of reliance established by the fraud-on-the-market doctrine. *Id.* ¶¶ 47-48.

## II. Lead Plaintiff and Lead Counsel Applications

This action was commenced on May 22, 2017. On that day, The Rosen Law Firm—counsel for the original filer, Edmund Murphy III—issued an early notice pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") advising class members, among other things, of the allegations and claims in the Complaint and of the deadline for lead-plaintiff applications, July 21, 2017. ECF 6-1. On July 21, 2017, two motions to be appointed lead plaintiff were filed. Mac Phail Trust and Kreuser moved to be appointed co-lead plaintiffs and for the Court to approve their selection of The Rosen Law Firm and BG&G as co-lead counsel. ECF 5. GWI Enterprise moved to be appointed sole lead plaintiff and for the Court to approve its selection of Levi & Korsinsky as sole lead counsel. ECF 7. The movants also simultaneously moved for consolidation of *GWI Enterprise Ltd.* v. *JBS S.A. et al.*, No. 1:17-cv-4019 (E.D.N.Y. July 6, 2017), with this action, ECF 5, 7. The Court granted the motions for consolidation on August 14, 2017. ECF 12.

Mac Phail Trust and Kreuser have no ostensible affiliation with one another beyond their joint lead-plaintiff application. Neither Mac Phail Trust nor Kreuser purports to be an institutional investor. GWI Enterprise, by contrast, presents itself as "a sophisticated, institutional investor." ECF 10 at 1. Based on the firm profiles submitted by the movants, all three law firms proposed as

lead (or co-lead) counsel have experience with securities class action litigation. *See* ECF 6-4, 6-5, 7-6. The firm profiles for The Rosen Law Firm and Levi & Korsinsky indicate that each firm has experience serving as lead or co-lead counsel in a class action. *See* ECF 6-4, 7-6. The firm profile for BG&G is less clear as to whether BG&G itself has ever served as lead or co-lead counsel in a class action, as opposed to merely assisting lead counsel. *See* ECF 6-5 at 2 n.1 ("Co-counsel, as used in this document, means that BG&G works together with or assists lead counsel in a matter. This often occurs when a BG&G client is appointed as lead plaintiff.").

The movants do not dispute each other's submissions regarding their trading activity and losses during the Class Period. According to those submissions, GWI Enterprise suffered a loss of $385,918.25 due to its purchases of JBS ADRs, ECF 7-4, whereas Mac Phail Trust and Kreuser had combined losses of $1,416.03, ECF 6-3. GWI Enterprise also submitted the below chart summarizing the movants' respective trading activity in JBS ADRs during the Class Period, which Mac Phail Trust and Kreuser have not disputed:

| | Number of Shares Purchased | Net Shares Purchased During Class Period | Net Funds Expended During Class Period |
|---|---|---|---|
| GWI Enterprise | 191,000 | 191,000 | $1,197,069 |
| Jack Mac Phail Revocable Living Trust and Philipp Kreuser | 1,325 | 1,325 | $7,038 |

ECF 9 at 2-3.

In their opposition to GWI Enterprise's lead plaintiff motion, Mac Phail Trust and Kreuser make a number of allegations concerning GWI Asset Management SA ("GWI Asset") and Mu Hak You ("You"), the CEO, sole director, and owner of GWI Asset. *See* ECF 8, Exs. 1-5. You is also the controlling shareholder/owner of GWI Holdings, which is the sole shareholder/owner of

4

GWI Enterprise.  ECF 7-3.  Mac Phail Trust and Kreuser's allegations, which they support with news articles from the internet, are, in brief, as follows:

- In May of 2017, You and GWI Asset were found by the Securities and Exchange Commission of Brazil ("CVM") to have violated a regulation prohibiting certain investors from investing more than seventy percent of their assets in a single issuer.  *See* ECF 8-2 at 1-5.  According to the CVM, You and GWI Asset's investment strategy "not only demonstrated lack of care and diligence, but also contributed to [f]urther depreciate the share price, maximizing the [f]und's losses."  *Id.* at 4.  The CVM imposed a fine on GWI Asset and suspended, for five years, You's authorization for professional management of a securities portfolio.  *Id.* at 5.  The conduct for which GWI Asset and You were sanctioned and suspended occurred in 2011.  *See id.* at 3-4.

- A 2016 news article indicates that, in a statement, "GWI [Asset] said all its trades are within limits set by the Sao Paolo exchange and Brazil's securities regulator."  ECF 8-1 at 3.  Mac Phail Trust and Kreuser claim that the May 2017 decision by the CVM, described above, proves this statement to have been false.  ECF 8 at 4.

- In 2016, You and GWI Asset were accused of breaching fiduciary duties, abusing shareholders' rights, engaging in insider trading, and violating Brazilian securities laws.  *See* ECF 8-4 at 3.  These accusations were not leveled by the CVM, however, but by a private litigant, Saraiva, which is a Brazilian online shopping company in which GWI Asset owns (or owned) a substantial stake.  *See* ECF 8-4.  A news article detailing the allegations indicates that "the Securities and Exchange Commission of Brazil [CVM] has not yet analyzed the allegations" from Saraiva against GWI Asset.  ECF 8-5 at 5.  The same article states that "CVM Management has hinted that the case is delicate" and quotes someone anonymously, ostensibly a CVM official, as saying that GWI's board structure "reinforces suspicions of more serious practices, such as the use of privileged information, in line with Saraiva's claims."  *Id.*

- GWI Enterprise was flagged by the International Consortium of Investigative Journalists for having a connection to a Bahamas intermediary entity that may be used as a tax haven.  ECF 8 at 5; ECF 8-6.

GWI Asset is "an entity separate and apart from GWI Enterprise."  ECF 10.  According to GWI Enterprise, it is not related to GWI Asset.  *Id.* at 5.  As represented during oral argument by counsel for GWI Enterprise, GWI Enterprise is a family investment trust that invests on behalf of the You family and contains only You family money, whereas GWI Asset is a public fund with outside investors; You is the principal of both GWI Enterprise and GWI Asset.  GWI Enterprise also notes that (i) GWI Asset is appealing the May 2017 CVM decision and, pending the outcome of the

5

appeal, all of the CVM's findings and sanctions, including You's suspension, have been suspended, ECF 10 at 6, and (ii) GWI Asset disputes all of Saraiva's allegations, *id.* The purported basis for GWI Asset's appeal of the CVM decision, as described by GWI Enterprise's counsel during oral argument, is that GWI Asset and You qualify for a safe harbor because they self-reported the regulatory violation to the CVM and cured it within two weeks.

## DISCUSSION

### I. Appointment of Lead Plaintiff

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who among competing applicants is the "most adequate plaintiff," a court is guided by the PSLRA's "rebuttable presumption" that "the most adequate plaintiff in any private action . . . is the person or group of persons that—

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted "only upon proof" that the presumptively most adequate plaintiff (i) "will not fairly and adequately protect the interests of the class" or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* §§ 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

### A. Largest Financial Interest

The PSLRA does not provide a specific method for calculating which plaintiff or plaintiff group has the "largest financial interest" in the relief sought, but courts in the Second Circuit consider four factors:

(1) the total number of shares purchased during the class period;

(2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);

(3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and

(4) the approximate losses suffered.

*In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012) (quoting *City of Monroe Employees' Ret. Sys.* v. *Hartford Fin. Servs. Grp.*, 269 F.R.D. 291, 293 (S.D.N.Y.2010)). Courts generally "'place the most emphasis on the last of the four factors: the approximate loss suffered by the movant.'" *Id.* (quoting *Baughman* v. *Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008)).

Here, all four factors indicate that GWI Enterprise has the largest financial interest in the action. GWI Enterprise suffered significantly greater losses than Mac Phail Trust and Kreuser, the only other movants. *Compare* ECF 7-4 (showing a $385,918.25 loss for GWI Enterprise), *with* ECF 6-3 (showing a combined loss of $1,416.03 for Mac Phail Trust and Kreuser).[1] Moreover,

---

[1] Under the PSLRA, damages are calculated based on (i) "the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market"; or, if the plaintiff sells or repurchases the subject security before the end of the 90-day period, (ii) "the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during

7

compared with Mac Phail Trust and Kreuser, GWI Enterprise also (i) purchased a higher total number of shares during the Class Period, (ii) purchased more net shares during the Class Period, and (iii) expended greater net funds during the Class Period. *See* ECF 9 at 2-3. Mac Phail Trust and Kreuser do not dispute that GWI Enterprise has the largest financial interest in the action, nor could they.

### B. Rule 23 Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, a prospective lead plaintiff must, to qualify for the rebuttable presumption, "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 provides that a party (or parties) may serve as a class representative only if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). At the lead plaintiff stage, however, "[t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Weinberg* v. *Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *see also, e.g.*, *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-39 (S.D.N.Y. 2008) (same).

---

the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security." 15 U.S.C. § 78u-4(e).

1. Typicality

The Rule 23(a) typicality requirement provides that a lead plaintiff's claims must be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The requirement is satisfied "'where . . . the claims of the representative [p]laintiffs arise from the same course of conduct that gives rise to the claims of the other [c]lass members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives.'" *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 511 (S.D.N.Y. 1996)). The lead plaintiff need not be identically situated with all class members, however. *See id.*

Here, GWI Enterprise has made a prima facie showing that it satisfies the typicality requirement, as it brings the same legal claims, premised on the same alleged facts, as other class members.

2. Adequacy

Under Rule 23(a)(4), the adequacy requirement is satisfied if (i) "class counsel [is] 'qualified, experienced and generally able' to conduct the litigation" and (ii) "class members [do] not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (quoting *Eisen* v. *Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) ("In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." (quotation marks and citation omitted)).

Here, GWI Enterprise has selected qualified and experienced counsel, as indicated by Levi & Korsinsky's firm profile. *See* ECF 7-6. Moreover, GWI Enterprise, as the movant with by far the largest financial loss, appears to have interests that are aligned with the other members of the class as well as the motivation to vigorously pursue its claims. GWI Enterprise has thus made a preliminary showing that it satisfies the adequacy requirement.

### C. Mac Phail Trust and Kreuser's Attempts to Rebut the Presumption

Since it is the movant with the largest financial interest and has made a preliminary showing of typicality and adequacy, GWI Enterprise is presumptively the most adequate plaintiff. As noted above, this presumption may be rebutted "only upon proof" that the presumptively most adequate plaintiff (i) "will not fairly and adequately protect the interests of the class" or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). "[E]xacting proof" is needed to rebut the presumption. *In re Facebook, Inc.*, 288 F.R.D. 26, 40 (S.D.N.Y. 2012). Conclusory assertions and mere speculation will not suffice. *See OFI Risk Arbitrages* v. *Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014) ("The [competing movant] must produce more than speculation to rebut the presumption. . . . Mere speculation about a unique defense does not meet this standard."); *Constance Sczesny Trust* v. *KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the presumptively most adequate plaintiff] would be uniquely subject.").

Here, Mac Phail Trust and Kreuser attempt to rebut the presumption that GWI Enterprise is the most adequate plaintiff in two ways. First, Mac Phail Trust and Kreuser argue that GWI

Enterprise will not fairly and adequately protect the interests of the class because GWI Enterprise and its controlling shareholder/owner, You, are inadequate fiduciaries and lack credibility. Second, for essentially the same reasons, Mac Phail Trust and Kreuser argue that GWI Enterprise will be subject to unique defenses that threaten to become the focus of the litigation.

### 1. GWI Enterprise's Ability to Fairly and Adequately Protect the Interests of the Class

Mac Phail Trust and Kreuser argue that GWI Enterprise is unable to fairly and adequately represent the class because the Saraiva accusations and CVM decision detailed above "demonstrate[] [You's] blatant disregard for the interests of investors who have entrusted him with their investments over the years." ECF 8 at 6. According to Mac Phail Trust and Kreuser, this disregard shows that GWI Enterprise is incapable of serving as a fiduciary to the class. *See id.* at 6-7. Moreover, they argue that GWI Asset's statement, in a 2016 news article, that "all its trades are within limits set by the Sao Paulo exchange and Brazil's securities regulator," ECF 8-1 at 3, calls You's credibility into question because the May 2017 CVM decision—which found GWI Asset's trading to have violated a CVM regulation—shows the statement to have been false. *See* ECF 8 at 6.

As GWI Enterprise argues, however, the PSLRA requires that the presumption that the plaintiff with the largest financial interest is the most adequate plaintiff be rebutted with "exacting proof." *Facebook*, 288 F.R.D. at 40. The handful of news articles cobbled together by Mac Phail Trust and Kreuser fall short of that standard. More significantly, even taken at face value, the news articles do not paint the damning portrait of GWI Enterprise that Mac Phail Trust and Kreuser suggest. First, as a general matter, neither Saraiva's accusations nor the regulatory violation relates to the actual entity applying to be a lead plaintiff, GWI Enterprise, except insofar as You is the controlling shareholder/owner of GWI Enterprise's parent company. Second, the 2017 CVM

11

decision found a violation only of a technical rule regarding investment concentrations, and it is currently being appealed by GWI Asset. *See* ECF 10 at 6-7. Courts have appointed lead plaintiffs guilty of committing similarly minor infractions. *See, e.g.*, *Levie* v. *Sears, Roebuck & Co.*, 496. F. Supp. 2d 944, 951 (N.D. Ill. 2007) (appointing as lead plaintiff in a securities fraud class action a day trader who had been sanctioned by the National Association of Securities Dealers for engaging in deceptive stock transactions and who had failed to disclose that fact in discovery). Third, the accusations from third-party Saraiva, regarding insider trading and market manipulation, among other things, are just that—accusations—and moreover accusations that come from company management in the midst of a dispute with GWI Asset and You over Saraiva's direction. *See* ECF 8-1 at 2. Courts have declined to disqualify lead plaintiffs over similar allegations. *See, e.g.*, *Miller* v. *Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *7 (S.D. Fla. Apr. 18, 2008) (declining to disqualify movant as lead plaintiff over "accusations of insider trading"). Finally, the notion that You and GWI Enterprise's credibility is called into question—and that GWI Enterprise should therefore be disqualified as lead plaintiff—because of a statement, by GWI Asset, in a 2016 news article on a subject unrelated to this litigation is naked hyperbole. Courts have disqualified lead plaintiffs on credibility grounds, but in cases where the lead-plaintiff applicant's credibility was called into question as to issues central to the litigation. *See, e.g.*, *Savino* v. *Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (disqualifying lead plaintiff where he had "repeatedly changed his position" regarding "the letters that form the very basis for his lawsuit"). That is not the situation we are faced with here.

In sum, Mac Phail Trust and Kreuser have not presented persuasive proof that GWI Enterprise will not be able to fairly and adequately protect the interests of the class.

## 2. GWI Enterprise's Susceptibility to Unique Defenses

Based on the same Saraiva accusations and CVM decision discussed above, Mac Phail Trust and Kreuser argue that GWI Enterprise is subject to unique defenses because "Defendants will undoubtedly challenge You and GWI's general credibility and honesty on cross-examination and at trial, their adequacy as proposed class representatives, and will embroil the class with unnecessary and vulnerable questions concerning You's alleged securities violations, which are similar to the ones alleged in this action." ECF 8 at 8. Even accepting the somewhat questionable assertion that You's alleged violations are similar to the ones alleged in this action, this argument is unconvincing for the same reasons the Saraiva accusations and challenged CVM decision do not constitute sufficient proof that GWI Enterprise will not be able to fairly and adequately protect the interests of the class. Moreover, even if You's credibility were in question, the Court struggles to envision a scenario in which his testimony would be relevant, let alone critical, at trial. This action is a securities fraud case; GWI Enterprise's trades and losses can be definitively substantiated via trading records, receipts, and the like, and GWI Enterprise will be relying on the fraud-on-the-market doctrine to prove reliance. Mac Phail Trust and Kreuser have presented no credible proof suggesting GWI Enterprise will be uniquely unable to rely on the fraud-on-the-market doctrine or otherwise indicating that You's testimony will be especially important.[2]

---

[2] During oral argument, counsel for Mac Phail Trust and Kreuser claimed that, according to the articles they submitted as exhibits, You is a "risky investor" who places heavy bets "on a handful of companies," as well as "a very active investor" who "likes to get in front of management" and "likes to get information that otherwise would not be publicly available." But even assuming the allegations in those articles are accurate, none speak specifically to (i) the investment strategy employed by *GWI Enterprise*, You's family investment trust and the entity actually applying to be lead plaintiff, or to (ii) *any* GWI entity's investment in JBS. The investment strategy that You employs on behalf of GWI Asset (and other such funds with outside investors) and his alleged access to non-public information about companies *other than JBS* are entirely irrelevant to whether GWI Enterprise can rely on the fraud-on-the-market doctrine to prove reliance in this case.

In their reply brief, Mac Phail Trust and Kreuser raise one additional argument. They argue that "[t]here is no logical economic reason for a Brazilian fund to purchase the U.S. listed American Depository Receipts ('ADRs') on the OTCQX market, as the transaction costs to purchase the ADRs are higher." ECF 11 at 2. According to Mac Phail Trust and Kreuser, "[t]his raises a number of unique concerns, particularly because there are reports tying You and/or GWI to improper offshore tax havens." *Id.* They also suggest that GWI Enterprise "may have engaged in a unique hedging strategy by taking different positions in JBS' Brazilian listed securities while simultaneously transacting in JBS stock in the United States. Such trading strategies and methodologies would be another reason that You and GWI would not be adequate." *Id.* Courts indeed have denied lead plaintiff applications in situations where an applicant's hedging strategy might leave it vulnerable to unique defenses. *See, e.g.*, *In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000). But Mac Phail Trust and Kreuser have hardly provided adequate proof that GWI Enterprise was engaged in such a hedging strategy. Their allegations concerning the potential use of tax havens and the supposed economic illogic of investing in ADRs are mere speculation and innuendo,[3] which are insufficient to rebut the presumption that GWI Enterprise is the most adequate plaintiff. *See OFI Risk Arbitrages*, 63 F. Supp. at 403 ("The [competing movant] must produce more than speculation to rebut the presumption. . . . Mere speculation about a unique defense does not meet this standard.").

---

[3] Regarding their tax haven allegations, Mac Phail Trust and Kreuser's own exhibit includes the following disclaimer: "There are legitimate uses for offshore companies and trusts. We do not intend to suggest or imply that any persons, companies or other entities included in the ICIJ Offshore Leaks Database have broken the law or otherwise acted improperly." ECF 8-6 at 4. Mac Phail Trust and Kreuser *do* suggest that GWI Enterprise has acted improperly, yet they supply no additional proof in support of that accusation. Even assuming GWI Enterprise made use of offshore tax havens, Mac Phail Trust and Kreuser make no attempt to explain why that conduct would render GWI Enterprise inadequate to serve as lead plaintiff.

The parties presented their respective arguments in support of their claims for appointment at oral argument, and the Court concludes that the presumption favoring GWI Enterprise remains undisturbed.

## II. Appointment of Lead Counsel

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). But while "the Court maintains discretion in appointing lead counsel to protect the interests of the class, the statute evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Hom* v. *Vale, S.A.*, Nos. 1:15-cv-9539, 1:16-cv-658, 2016 WL 880201, at *7 (S.D.N.Y. Mar. 7, 2016) (quotation marks omitted).

Here, GWI Enterprise has moved for approval of its selected counsel, Levi & Korsinsky, as lead counsel. ECF 7. In support of that request, GWI Enterprise has submitted a detailed firm resume for Levi & Korsinsky, which indicates that the firm has experience serving as lead counsel in complex securities class actions like the one here. ECF 7-6. Mac Phail Trust and Kreuser do not dispute Levi & Korsinsky's qualifications, nor did their counsel do so at oral argument.

In view of the foregoing, the Court sees no reason to disturb GWI Enterprise's choice of Levi & Korsinsky to serve as lead counsel.

## CONCLUSION

For the foregoing reasons, GWI Enterprise's motion is granted: The Court appoints GWI Enterprise as lead plaintiff and approves the selection of Levi & Korsinsky as lead counsel. Mac Phail Trust and Kreuser's motion is accordingly denied.

SO ORDERED.

Dated:      Brooklyn, New York
            October 6, 2017

                                        /s/_____
                                        I. Leo Glasser