**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

EDMUND MURPHY III, individually and
on behalf of all others similarly situated,

                                    Plaintiff,

                v.

JBS S.A.,

                                    Defendant.

Case No.:  1:17-cv-03084-ILG-RER

Hon. Judge I. Leo Glasser

Hon. Magistrate Judge Ramon E. Reyes, Jr.

## STIPULATION OF SETTLEMENT

WHEREAS, capitalized terms in this Stipulation of Settlement have the meanings ascribed to them in Section I below; and

WHEREAS, on May 22, 2017, Edmund Murphy III filed a securities class action complaint in the above-captioned action against JBS S.A. and three of its officials (Wesley Mendonça Batista, Gilberto Tomazoni and Joesley Mendonça Batista) alleging violations of the Exchange Act; and

WHEREAS, on July 7, 2017, GWI Enterprise Ltd. filed a securities class action complaint in a parallel case captioned *GWI Enterprise Ltd. v. JBS S.A., et al.*, 1:17-cv-04019-ILG-RER (E.D.N.Y.), against JBS and the same three officials alleging violations of the Exchange Act; and

WHEREAS, plaintiffs in both actions moved to consolidate the actions, and, in an August 14, 2017 order, the Court granted the motions and consolidated the *GWI Enterprise Ltd.* action into this action; and

WHEREAS, on July 21, 2017, competing motions seeking to appoint lead counsel and lead plaintiff were filed by Jack Mac Phail Revocable Living Trust and Philipp Dreuser, on the one hand, and GWI Enterprise Ltd., on the other hand; and

WHEREAS, on October 6, 2017, the Court issued an order appointing GWI Enterprise Ltd. as Lead Plaintiff and its counsel, Levi & Korsinsky, LLP, as Class Counsel; and

WHEREAS, in October 2017, Letters Rogatory were issued by the Court relating to JBS and the three named officials, all of whom are located in Brazil; and

WHEREAS, Lead Plaintiff informed the Court in a June 28, 2018 letter that (*i*) service might have been completed on JBS (though Lead Plaintiff had not received confirmation of such service), (*ii*) service had not been completed on the three officials and (*iii*) Lead Plaintiff and JBS had agreed to participate in a confidential mediation that would, if successful, resolve the entire case; and

WHEREAS, Lead Plaintiff and JBS, through their counsel, participated in mediation sessions with The Hon. Faith S. Hochberg, U.S.D.J. (Ret.) on August 20, 21 and 22, 2018; and

WHEREAS, prior to the mediation sessions, Lead Plaintiff provided JBS and the Mediator with a draft of its proposed consolidated class action complaint, the parties provided the Mediator and each other with mediation statements, and the parties exchanged expert information relevant to the class action claims; and

WHEREAS, at the end of the August 22, 2018 mediation session, the parties reached an agreement in principle regarding the primary terms of a settlement, which agreement was contingent on execution of a full settlement agreement and collateral documents; and

WHEREAS, on August 29, 2018, Lead Plaintiff filed its Consolidated Class Action Complaint against JBS; and

WHEREAS, Lead Plaintiff and JBS filed a joint stipulation on August 29, 2018, in which they advised the Court that (*i*) settlement discussions were continuing, (*ii*) the parties hoped to finalize such discussions by the end of October 2018 and (*ii*) JBS had agreed to waive service of the Complaint; and

WHEREAS, pursuant to subsequent stipulations, Lead Plaintiff and JBS informed the Court that the parties hoped to finalize their discussions by the end of December 2018;

WHEREAS, Lead Plaintiff and JBS negotiated the terms of a settlement through September, October, November and December 2018, with such negotiations resulting in execution of this Stipulation of Settlement and its Exhibits; and

WHEREAS, throughout the pendency of the Action and the Settlement negotiations, Lead Plaintiff and Defendant have been advised by various consultants and experts, including individuals with expertise in estimating potential damages in cases involving allegations of securities law violations, and by competent counsel with experience in securities lawsuits such as this Action; and

WHEREAS, based upon Class Counsel's investigation and evaluation of the facts and law relating to the claims alleged in this Action, Class Counsel's pre- and post-filing investigations, and Class Counsel's consultation with experts, and, subject to review of the Confirmatory Discovery that will be provided to Class Counsel pursuant to the terms of this Settlement Agreement and the Confidentiality Agreement, Lead Plaintiff and Class Counsel have agreed to settle the Action and release the Releasees as to the Released Class Claims pursuant to the terms of this Settlement Agreement after considering, among other things: (*i*) the substantial benefits that the terms of the proposed Settlement would provide to Class Members; (*ii*) the attendant risks of litigation, especially in complex actions such as this one in which, among other

things, the vast majority of the evidence, as well as the knowledgeable witnesses, will be located in Brazil and will mostly involve Portuguese speakers and documents written in Portuguese; (*iii*) the defenses available to Defendant; (*iv*) the difficulties and delays inherent in such litigation, including the difficulty of enforcing any judgment Lead Plaintiff might obtain against a Brazilian company; (*v*) the desirability of consummating this Settlement Agreement promptly to provide effective relief to Class Members; and (*vi*) Lead Plaintiff's and Class Counsel's current belief, to be verified through the Confirmatory Discovery that will be conducted pursuant to this Settlement Agreement, that the proposed Settlement is fair, reasonable and adequate and in the best interests of Class Members; and

WHEREAS, unless specifically admitted elsewhere, Defendant does not concede any wrongdoing or liability in connection with any facts or Claims that have been, could have been or could be alleged in the Action, but it nevertheless prefers that the Action be settled and dismissed because the proposed Settlement would, among other things:  (*i*) bring to an end the substantial expense, burdens, and uncertainties associated with continued litigation of the Claims asserted in this Action; (*ii*) finally put to rest those Claims and the underlying matters; and (*iii*) confer substantial benefits upon Defendant, including avoidance of further disruption of the management and operation of its business due to the pendency and defense of the Action; and

WHEREAS this Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed to be an admission by Defendant or the other Releasees, or any of them individually, of any wrongdoing or liability; and

WHEREAS, except as otherwise provided in this Settlement Agreement, this Settlement Agreement shall not be admissible in any judicial, administrative, or other proceeding or cause of

action as an admission of liability or for any purpose other than to enforce the terms of this Settlement Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, including Lead Plaintiff (individually and in its representative capacity) and JBS, by and through their duly authorized counsel, that, subject to the Court's approval and such approval's becoming Final, (*i*) the Action and the matters raised in it are hereby settled and compromised as to JBS and (*ii*) the Action will be dismissed on the merits and with prejudice as to JBS based upon the terms and conditions set forth in this Settlement Agreement, including, among other things, that, as set out in the Release, the Released Class Claims will be released as to the Releasees and the Released Releasees' Claims will be released as to the Releasors.

## I.    DEFINITIONS

A.     As used in this Settlement Agreement, the following terms have the meanings set forth herein:

1.     "Action" means the putative securities class action pending in this Court under the caption *Edmund Murphy III v. JBS S.A.*, Case No. 1-17-cv-03084-ILG-RER (E.D.N.Y), including any other cases that have been or might be consolidated into that action as of the Final Settlement Date, including without limitation the case captioned *GWI Enterprise Ltd. v. JBS S.A., et al.*, 1:17-cv-04019-ILG-RER (E.D.N.Y.), which case was consolidated into this Action pursuant to the Court's August 14, 2017 order.

2.     "ADRs" means American Depositary Receipts.

3.     "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. Part 210.1-02(b).

4.     "Approval Order" means the order to be entered by the Court approving the Settlement and dismissing the Complaint and all Claims in the Action as contemplated in

Section XIII of this Settlement Agreement, which order the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit B.

5.      "Attorneys' Fees and Expenses Application" means the motion for fees and expenses to be made by Class Counsel as set out in Section X below.

6.      "Attorneys' Fees and Expenses Award" means the amount that the Court awards to Class Counsel to compensate it for its fees and expenses in connection with investigating, prosecuting and/or settling the Action, as provided for in Section X below.

7.      "Authorized Claimant" means a Class Member (or the representative of such Class Member, including agents, administrators, executors, heirs, predecessors, successors, Affiliates, or assigns) whose claim for recovery from the settlement fund has been allowed pursuant to the terms of this Settlement Agreement.

8.      "Business Day" means a day other than a Saturday, Sunday or Legal Holiday.

9.      "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) and 1715.

10.     "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees, and any losses whatsoever, whether in law, in admiralty, or in equity, and whether based on any United States federal, state or common-law right of action or foreign statutory or common-law right of action (including Brazilian law) or

otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, including Unknown Claims.

11.     "Claim Form" means the form, as approved by the Court, that shall be included in mailings and distributions of the Individual Notice to potential Class Members and that Class Members will use to submit claims under the procedures set out in this Settlement Agreement, which form the Settling Parties shall ask the Court to approve substantially as set out as Exhibit F.

12.     "Claims Administrator" means, subject to Court approval and appointment in the Preliminary Approval Order, A.B. Data, Ltd.

13.     "Class" or "Class Members" means, for purposes of this Settlement, all persons and entities (including legal beneficiaries or participants in such entities) who, during the Class Period, purchased or otherwise acquired Relevant Securities.  Excluded from the Class are:

a.     such persons or entities who submit valid and timely requests for exclusion from the Class;

b.     such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees and released all of the Releasees from any further Claims arising out of or related to the Released Class Claims; and

c.     JBS and all of its (*i*) current and former officers, directors and employees (including Wesley Mendonça Batista and Joesley Mendonça Batista), (*ii*) parents (including J&F Investimentos S.A.), Affiliates, subsidiaries, successors and predecessors, (*iii*) any entity in which JBS or any of its current and former officers, directors or employees (including Wesley Mendonça Batista and Joesley Mendonça Batista) has, or had during the Class

Period, a Controlling Interest and (*iv*) for the individuals identified in (*i*), (*ii*) and/or (*iii*), their Family Members, legal representatives, heirs, successors or assigns.

14.    "Class Counsel" means the law firm of Levi & Korsinsky, LLP.

15.    "Class Period" means the period of time from June 1, 2013 through July 5, 2017, inclusive.

16.    "Complaint" means the Consolidated Class Action Complaint filed in the Action on August 29, 2018.

17.    "Complete Bar Order" means the bar order, the text of which is set forth in paragraph 19 of the Approval Order (Exhibit B).

18.    "Confidentiality Agreement" means the Confidentiality Agreement in the form entered into by Lead Plaintiff and JBS, a copy of which is attached as Exhibit G.

19.    "Confirmatory Discovery" means the factual information that Defendant will provide to Lead Plaintiff subject to Section II below.

20.    "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or cause the direction of the management and policies of the entity, whether through the ownership of voting shares, by contract or otherwise.  Any disputes as to whether JBS or any other Releasee has a Controlling Interest in an entity or whether an entity has a Controlling Interest in JBS or any other Releasee shall, solely for purposes of determining whether a Controlling Interest exists under this Settlement Agreement, be submitted to the Mediator for final, binding resolution, and the party claiming that the interest is a Controlling Interest shall bear the burden of proof as to whether or not the interest is or was a Controlling Interest for purposes of this Settlement Agreement.

21.    "Court" means the United States District Court for the Eastern District of New York.

22.    "Defendant" means JBS.

23.    "Defendant's Counsel" means Proskauer Rose LLP.

24.    "Escrow Account" means the account(s) described in Section III into which the Settlement Amount and the Settlement Expense Amount shall be paid.  The Escrow Account shall be treated for tax purposes as a Qualified Settlement Fund, as described below.

25.    "Escrow Agent" means The American Deposit Management Company, which shall act as escrow agent for the Escrow Account.

26.    "Excess Settlement Expense Amount" means the amount of Settlement Expenses in excess of the Settlement Expense Amount.

27.    "Exchange Act" means the Securities Exchange Act of 1934, as amended.

28.    "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

29.    "Fairness Hearing" means the hearing at or after which the Court will make a final decision, pursuant to Fed. R. Civ. P. 23, as to whether this Settlement Agreement is fair, reasonable and adequate to settle the Class Members' Claims against Defendant and the other Releasees and whether the Court should approve the proposed Settlement; *provided* that the Fairness Hearing shall be scheduled for a date that is no fewer than one hundred ten (110) days following the Preliminary Approval Date.

30.    "Family Members" means an individual's father, mother, grandfather, grandmother, sister, brother, spouse/partner, son and/or daughter, and any other person living in, or a member of, such an individual's household during the Class Period.

31.    "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

a.    if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired;

b.    if any appeal is taken therefrom, on the date on which all appeals therefrom – including petitions for rehearing or reargument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and any related appeals or petitions, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the relevant order or judgment.

32.    "Final Settlement Date" means the date on which the Approval Order and the Judgment become Final.

33.    "Incentive Award" means the amount that the Court awards to Lead Plaintiff to compensate Lead Plaintiff for its time and effort in commencing and pursuing the Action.

34.    "Incentive Award Application" means the application by which Lead Plaintiff shall seek an Incentive Award, as provided for in Section XI below.

35.    "Individual Notice" means the notice, as approved by the Court, described in Section IV and in the Preliminary Approval Order, that Class Counsel will cause the Claims Administrator to disseminate to putative Class Members informing them of the Settlement contemplated by this Settlement Agreement, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit D.

36.    "Investment Decision" means any decision regarding an investment in Relevant Securities during the Class Period, including a decision to hold such Relevant Securities during the Class Period.

37.    "JBS" means JBS S.A.

38.    "JBS Affiliate" means any Affiliate, holding company, or subsidiary of JBS, and any other person or entity affiliated with JBS through direct or indirect ownership of JBS shares, including, without limitation, J&F Investimentos SA, J&F Participações S.A., FB Participações Ldta., Wesley Mendonça Batista, and Joesley Mendonça Batista.

39.    "JBS Affiliated Persons" means JBS, any JBS Affiliates, and the officers, directors, employees, agents and representatives of any of them.

40.    "Judgment" means the Judgment entered by the Court as contemplated in Section XIII of this Settlement Agreement, which Judgment the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit C.

41.    "Lead Plaintiff" means GWI Enterprise Ltd., in its individual capacity and as representative of the Class.

42.    "Legal Holiday" means New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day designated as a federal observed holiday.

43.    "Mediator" means The Honorable Judge Faith S. Hochberg, U.S.D.J. (Ret.), or, if she is unavailable, someone of similar stature upon whom the Settling Parties agree.

44.    "Net Settlement Amount" means (*i*) the Settlement Amount, (*ii*) plus any Residual Settlement Expense Amount, (*iii*) plus any interest that has accrued on the amounts on

deposit in the Escrow Account, (*iv*) less any Tax Expenses paid or owing, (*v*) less any Excess Settlement Expense Amount and (*vi*) less the Attorneys' Fees and Expenses Award.

45.    "Nominees" means brokerage firms, banks and other institutions that hold Relevant Securities in street name or other similar fashion for the benefit of other persons or entities.

46.    "Notice and Administrative Expenses" means any and all expenses associated with the administration of the Settlement contemplated by this Settlement Agreement, including the Claims Administrator's fees and expenses and all other fees and expenses associated with (*i*) printing and sending the Individual Notice to potential Class Members, (*ii*) publishing the Summary Notice, (*iii*) assisting Class Members with filing Claim Forms; (*iv*) processing Claim Forms, (*v*) setting up and maintaining a toll-free telephone number for potential Class Members to call, (*vi*) operating a settlement website and (*vii*) distributing the Net Settlement Amount.

47.    "Notice Program" means the program for informing potential Class Members about the proposed Settlement, including the Individual Notice, the Claim Form, the Summary Notice, and the manner of delivering and publishing such notices or forms.

48.    "Operative Facts" means those facts and circumstances that provide the factual predicate for the claims asserted in the Action and shall include, among other things:

a.    any and all alleged bribery payments or other purportedly improper payments made to Brazilian governmental officials, employees, or political parties by any JBS Affiliated Person [¶¶ 3-7, 9, 15, 45-46, 49-50, 56, 59-63, 65-71, 74-75, 105, 106, 114, 121-123];

b.    any and all facts and circumstances related to *Operation Car Wash (Lava Jato)*, launched by Brazilian authorities [¶¶ 77, 80-81, 133, 141];

c.    any and all facts and circumstances related to *Operation Lama Asfáltica*, launched by Brazilian authorities [¶ 78];

d.    any and all facts and circumstances related to *Operation Sepsis*, launched by Brazilian authorities [¶ 79];

e.    any and all facts and circumstances related to *Operation Greenfield*, launched by Brazilian authorities [¶ 82];

f.    any and all facts and circumstances related to *Operation Cui Bono*, launched by Brazilian authorities [¶¶ 85-86];

g.    any and all facts and circumstances related to *Operation Weak Flesh* (a.k.a *Carne Fraca*), launched by Brazilian authorities, including any allegedly improper payments made to government officials, inspectors, employees or political parties [¶¶ 5, 88, 153];

h.    JBS's stock repurchase plan approved by JBS's Board of Directors, and JBS's repurchase of shares pursuant to this plan [¶ 95];

i.    any and all transactions between any JBS Affiliated Person and Brazil's National Bank for Economic and Social Development, BNDES Participações, or any other entity affiliated with the National Bank or with BNDES Participações (collectively, the "BNDES"), and any investigations related to the facts and circumstances of such transactions [¶¶ 4, 15, 41, 43-51, 141, 154];

j.     any and all transactions between any JBS Affiliated Person and the Caixa Econômica Federal, FI-FGTS, FUNCEF, PETROS, PRB (or Marcos Pereira) and/or FIP PROT [¶¶ 41, 52-58, 123];

k.     foreign-exchange transactions entered into by any JBS Affiliated Person involving the Brazilian *real* and/or the U.S. dollar [¶¶ 97, 104];

l.     any and all facts and circumstances related to *Operation Bullish*, launched by Brazilian authorities [¶ 101];

m.     alleged relationships between any JBS Affiliated Person and Brazilian governmental officials, including, but not limited to, Brazil's president Michel Temer and former lower-house speaker Eduardo Cunha [¶¶ 5, 45-46, 49-50, 56, 62-63, 66, 68, 70-71, 74-75, 105, 114, 122];

n.     any and all facts and circumstances that led to plea agreements (including the negotiation of those agreements) between any officers, directors and/or employees of JBS or any JBS Affiliate with Brazilian authorities in connection with alleged bribery payments or other conduct [¶¶ 2-10, 91, 93, 98-100, 105-106, 108, 111, 114, 116, 122-125];

o.     any alleged transactions in JBS securities undertaken by or on behalf of any JBS Affiliated Person and involving purportedly material non-public information [¶¶ 8-9, 13, 91-95, 104, 109, 116-119, 161-162];

p.     the facts and circumstances that led to any raids of offices of JBS or any JBS Affiliate by Brazilian or other police or regulators [¶¶ 5, 85-86];

q.     any JBS Affiliated Person's dealings with Petrobras [¶¶ 52-54, 123];

r.      rating agencies' reports on or statements about JBS or any JBS Affiliate [¶¶ 109, 137];

s.      any allegedly improper conduct by any JBS Affiliated Person in connection with tax matters, including tax benefits, tax credits, tax legislation or regulations, or tax appeals [¶¶ 59-66, 121-123, 135-136];

t.      the facts and circumstances concerning any alleged attempts to influence CADE (the Brazilian Administrative Council for Economic Defense), the CVM (the Brazilian Securities and Exchange Commission), and/or Brazilian police or other governmental authorities in connection with pending matters or investigations [¶¶ 41-42, 72-76, 114, 123];

u.      the facts and circumstances that allegedly were discussed between JBS's former Chairman and a former executive of a JBS-related company regarding alleged crimes to which they allegedly had not confessed in connection with plea agreements entered into with the Brazilian authorities, including any recording of such conversation [¶ 9];

v.      JBS's financial condition, revenues, net investment income, operations, growth, acquisitions, and other financial metrics, and auditors' comments about JBS's financial condition [¶¶ 30-38, 40, 51, 126-157];

w.      JBS's internal controls, including any deficiencies and weaknesses in such controls [¶¶ 13-14, 39, 138, 148-150];

x.      JBS's compliance policies, business codes, codes of ethics and other policies and procedures (including, without limitation, its Manual of Ethical Conduct and its Material Information Disclosure Policy and

Securities Trading Policy), that were adopted or in effect during the Class Period, including any alleged deficiencies and weaknesses in such policies and procedures and/or breaches of such policies and procedures [¶¶ 13-14, 39, 138-139, 144-150];

y.      statements, representations or omissions regarding the existence or terms of, or adherence to JBS's internal controls and/or policies and procedures by any JBS Affiliated Person during the Class Period [¶¶ 13-15, 39, 106, 126-157];

z.      JBS's earnings announcements, net income postings, investment calls and regulatory filings during the Class Period [¶¶ 126-157];

aa.     any and all facts and circumstances relating to (*i*) J&F's execution of a Leniency Agreement in June 2017, including J&F's payment of a fine and undertaking of remedial measures pursuant to such Leniency Agreement, and (*ii*) JBS's execution of an Adherence Agreement in August 2017, including JBS's agreement to adhere to the remedial terms of the J&F Leniency Agreement [¶¶ 111, 115, 120];

bb.     any and all investigations, proceedings, or prosecutions by Brazilian, United States, or other government officials or regulators relating to any of the above matters that were commenced, underway or completed during the Class Period [¶¶ 44-45, 112, 141];

cc.     any and all facts and circumstances that were the subject of investigation that was commenced, underway or completed by the Brazilian Audit

Court (the TCU) during the Class Period, including the outcome of any such investigation [¶¶ 44-45, 112, 141];

dd.    any other investigations that were commenced, underway or completed during the Class Period, whether in Brazil or outside of Brazil, arising out of the facts and circumstances that gave rise to the investigations identified in this Section I.A.48; and/or

ee.    JBS's statements about, or alleged omissions concerning, any or all of the above matters during the Class Period [¶¶ 26-28, 126-159].

49.    "Original Complaints" means the May 22, 2017 complaint in this Action and the July 7, 2017 complaint filed in the case captioned *GWI Enterprise Ltd. v. JBS S.A., et al.*, 1:17-cv-04019-ILG-RER (E.D.N.Y.).

50.    "Plan of Allocation" means the terms and procedures for allocating the Net Settlement Amount among, and distributing it to, Authorized Claimants as the Court shall approve, which Lead Plaintiff shall ask the Court to enter substantially in the form set out in the Individual Notice (Exhibit D).

51.    "Post-Agreement Mediation Fees and Expenses" means any fees and expenses incurred by the Mediator after August 22, 2018 as approved by the Settling Parties.

52.    "Pre-Agreement Mediation Fees and Expenses" means fees and expenses in the amount of sixty-six thousand, eight hundred dollars ($66,800) incurred by the Mediator as of August 22, 2018.

53.    "Preliminary Approval Date" means the date on which the Preliminary Approval Order is entered on the Court's docket.

54.    "Preliminary Approval Order" means the order concerning, among other things, notice, administration and the scheduling of the Fairness Hearing that the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit A.

55.    "PSLRA" means the Private Securities Litigation Reform Act of 1995, as codified in the Exchange Act.

56.    "PSLRA Contribution Bar Order" means the statutory bar order, the text of which is set forth in paragraph 18 of the Approval Order (Exhibit B), to be entered by the Court pursuant to Section 21D(f)(7)(A) of the Exchange Act.

57.    "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulation § 1.468B-1.

58.    "Released Class Claims" means each and every Claim that Lead Plaintiff or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in the Original Complaints and in the Complaint) or (*ii*) could have asserted or could assert against any of the Releasees in connection with any of the Operative Facts, whether arising under any federal, state, or other statutory or common-law rule or under any foreign law (including Brazilian law), in any court, tribunal, agency or other forum, that both (A) arises out of or relates to the purchase or other acquisition of Relevant Securities, or to any other Investment Decision, during the Class Period, and (B) relates directly or indirectly to any of the Operative Facts and/or any alleged statements about or characterizations of – or alleged failures to disclose information about – any of the Operative Facts, including with respect to both subsections (*i*) and (*ii*) above of this Section I.A.58; *provided however*, that the term "Released Class Claims" does not include any claims to enforce this Settlement Agreement.

59.    "Released Releasees' Claims" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee, including JBS or the successors and assigns of JBS, or his, her or its respective estate, heirs, executors, agents, attorneys (including in-house counsel, outside counsel and Defendant's Counsel), beneficiaries, accountants, professional advisors, trusts, trustees, administrators and assigns, against Lead Plaintiff, any other Class Members, or any of their respective attorneys (including, without limitation, Class Counsel) and that arises out of or relates in any way to the initiation, prosecution or settlement of the Action or the implementation of this Settlement Agreement; *provided however*, that Released Releasees' Claim shall not include any Claim to enforce the Settlement Agreement.

60.    "Releasee" means each and every one of, and "Releasees" means all of, (*i*) JBS, (*ii*) JBS Affiliates, (*iii*) each of JBS's and JBS Affiliate's current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendant's Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers, parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers and investment bankers and any entities in which JBS or any JBS Affiliate has or had a Controlling Interest or that has or had a Controlling Interest in JBS or any JBS Affiliate, and (*iv*) for each of the foregoing Releasee, (*y*) to the extent the Releasee is an entity, each of its current and former officers, directors, employees, agents, representatives, any and all in-house counsel and outside counsel (including Defendant's Counsel), advisors, administrators, accountants, accounting advisors, auditors, consultants, assigns, assignees, beneficiaries, representatives, partners, successors-in-interest, insurance carriers, reinsurers,

parents, affiliates, subsidiaries, successors, predecessors, fiduciaries, service providers and investment bankers and any entities in which any Releasee has or had a Controlling Interest or that has or had a Controlling Interest in the Releasee and (*z*) to the extent the Releasee is an individual, each of his or her Family Members, estate, heirs, executors, beneficiaries, trusts, trustees, agents, representatives, attorneys, advisors, administrators, accountants, consultants, assigns, assignees, representatives, partners, successors-in-interest, insurance carriers and reinsurers.

61.    "Releasor" means each and every one of, and "Releasors" means all of, (*i*) Lead Plaintiff, (*ii*) all other Class Members and (*iii*) for each of the foregoing Releasors (*x*) their agents, representatives, attorneys (including Class Counsel), advisors, administrators, accountants, consultants, assigns, assignees, partners, successors-in-interest, insurance carriers, reinsurers and any individuals or entities (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Lead Plaintiff or any other Class Member or any entities in which any Releasor has or had a Controlling Interest or that has or had a Controlling Interest in the Releasor, (*y*) to the extent the Releasor is an entity, each of its current and former officers, directors, officials, any and all in-house counsel and outside counsel, auditors, parents, affiliates, subsidiaries, successors, predecessors, employees, fiduciaries, service providers and investment bankers and (*z*) to the extent the Releasor is an individual, each of his or her estates, heirs, executors, beneficiaries, trusts and trustees.

62.    "Relevant Securities" means ADRs that were issued for JBS shares.

63.    "Residual Settlement Expense Amount" means the balance, if any, of the Settlement Expense Amount remaining after all Settlement Expenses have been paid.

64.    "Settlement" means the settlement contemplated by this Settlement Agreement.

65.    "Settlement Agreement" means this Stipulation of Settlement and any accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

66.    "Settlement Amount" means five million, four hundred sixty-six thousand, six hundred dollars ($5,466,600).

67.    "Settlement Expense Amount" means four hundred thousand dollars ($400,000).

68.    "Settlement Expenses" means those expenses associated with implementation of the Settlement, including, but not limited to, (*i*) Notice and Administrative Expenses, (*ii*) Post-Agreement Mediation Fees and Expenses and (*iii*) any Incentive Award approved by the Court; *provided* that the Pre-Agreement Mediation Fees and Expenses shall not be included in Settlement Expenses.

69.    "Settling Parties" means Lead Plaintiff (on behalf of itself and Class Members) and Defendant.

70.    "Summary Notice" means the notice described in Section IV, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit E.

71.    "Supplemental Agreement" shall mean the agreement entered into by the Settling Parties through their respective counsel that is referenced in Section XIV below.   The Settling Parties agree to keep the Supplemental Agreement confidential and not to disclose it or file it with the Court unless (*i*) the Court otherwise orders or (*ii*) a dispute arises among the Settling Parties concerning the Supplemental Agreement's interpretation or application.  If the

Supplement Agreement must be provided to the Court, the Settling Parties shall seek leave to submit it *in camera* or to file it under seal.

72.     "Tax Expenses" means (*i*) all taxes on the income of the monies in the Escrow Account and (*ii*) any expenses and costs incurred in connection with the taxation of the Escrow Account (including expenses of tax attorneys and accountants).

73.     "Termination Threshold" means the threshold of requests for exclusion (as specified in the Supplemental Agreement) that give rise to Defendant's right to terminate the Settlement Agreement pursuant to Section XIV.C.

74.     "Unknown Claims" means any and all Released Class Claims that Lead Plaintiff or any other Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Releasees, and any Released Releasees' Claims that any Releasee does not know or suspect to exist in his, her or its favor at the time of the release of the Releasors, which, if known by Lead Plaintiff, a Class Member or a Releasee, might have affected his, her or its decision concerning the Settlement.  As to any and all Released Class Claims and Released Releasees' Claims, the Settling Parties stipulate and agree that, upon the Final Settlement Date, Lead Plaintiff and Defendant shall expressly waive, and each other Class Member, Releasor and Releasee shall be deemed to have waived, and by operation of the Approval Order and the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or of any other country (including Brazil), or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and Defendant acknowledge, and the other Class Members and Releasees by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Class Claims and Released Releasees' Claims was separately bargained for and was a key element of the Settlement.

      B.    Capitalized Terms

      1.    Capitalized terms used in this Settlement Agreement, but not defined above, shall have the meaning ascribed to them in this Settlement Agreement.

## II.    CONFIRMATORY DISCOVERY

      A.    Subject to the provisions of the Confidentiality Agreement, Defendant will provide Class Counsel with reasonable Confirmatory Discovery (as described in Section II.B below) regarding the Operative Facts underlying the claims in the Complaint to allow Lead Plaintiff and Class Counsel to explore whether the underlying Operative Facts are consistent with Lead Plaintiff's and Class Counsel's current understanding that the proposed Settlement is fair, reasonable and adequate.

      B.    Confirmatory Discovery shall consist of (*i*) providing Class Counsel with documents from the Bank of New York Mellon concerning the Relevant Securities traded during the Class Period, (*ii*) allowing Class Counsel access to documents in an electronic depository under the control of Defendant's Counsel that are relevant to the claims made in the Complaint and (*iii*) allowing Class Counsel to conduct informal interviews of one or two relevant JBS officials to be agreed upon by Class Counsel and Defendant's Counsel.

      C.    The Confirmatory Discovery described in Section II.B(*i*) shall be provided to Class Counsel with five (5) Business Days following the Preliminary Approval Date.  The remaining Confirmatory Discovery shall begin within twenty-five (25) days following the

Preliminary Approval Date and shall be completed by no later than sixty (60) days after commencement.

     D.    Any disputes that arise regarding Confirmatory Discovery (including any disputes relating to the content of Confirmatory Discovery or the JBS official(s) informally interviewed) shall be submitted to the Mediator for final, binding resolution.

     E.    The Confirmatory Discovery provided pursuant to this Section II may be used only consistent with the terms of the Confidentiality Agreement.

     F.    Subject to Sections XIV and XV below, if the Confirmatory Discovery contemplated by this Section II causes Lead Plaintiff and Class Counsel reasonably and in good faith to believe that the proposed Settlement Agreement is not fair, reasonable and adequate, Lead Plaintiff will have the right to terminate this Settlement Agreement within ten (10) days after Confirmatory Discovery has been completed.

     G.    Class Members will have access to the Confirmatory Discovery documents to which Class Counsel will have access pursuant to the terms set out in this Section and the terms of the Confidentiality Agreement for the limited purpose of determining whether to object to the Settlement or to request exclusion from it and for no other purpose, including the prosecution of any Claim against any Releasee in this Court or in any other forum, including in Brazil.

## III.    TERMS AND CONDITIONS OF THE SETTLEMENT

     A.    **Settlement Expense Amount**

     1.    JBS shall cause the Settlement Expense Amount to be paid into the Escrow Account within twenty (20) Business Days following the Preliminary Approval Date.

     2.    Pursuant to Class Counsel's and Defendant's Counsel's written authorization to the Escrow Agent, payments may be made out of the Settlement Expense Amount for (*i*) Notice and Administrative Expenses that are incurred and become due and

payable prior to the Final Settlement Date and (*ii*) any Post-Agreement Mediation Fees and Expenses incurred prior to the Final Settlement Date

      3.     JBS has already paid the Pre-Agreement Mediation Fees and Expenses and will not be reimbursed for them.

    B.   **Payment of Settlement Amount**

      1.     JBS shall cause the Settlement Amount to be paid into the Escrow Account within twenty (20) Business Days following the Preliminary Approval Date.

    C.   **Escrow Account**

      1.     With five (5) Business Days following the Execution Date, Class Counsel and Defendant's Counsel shall establish the Escrow Account.

      2.     From its inception until the Final Settlement Date, the Escrow Account shall be under the joint control of Class Counsel and Defendant's Counsel.

      3.     As of the Final Settlement Date, the Escrow Account shall be under the sole control of Class Counsel.

      4.     The Escrow Agent shall (*i*) administer the Escrow Account, (*ii*) invest the Settlement Amount in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and (*iii*) reinvest the proceeds of those instruments as they mature in similar instruments at their then-current market rates.  The Escrow Agent shall bear all risks related to the investment of the amounts in the Escrow Account made in accordance with the guidelines set forth in this paragraph.

      5.     The Escrow Agent shall disburse proceeds of the Escrow Account only (*i*) before the Final Settlement Date, upon the written instruction of Class Counsel and

Defendant's Counsel, and (*ii*) as of and after the Final Settlement Date, upon the written instruction of Class Counsel.

6.    The Escrow Agent shall keep an accounting of expenses paid out of the Settlement Expense Amount and provide such accounting to Class Counsel and Defendant's Counsel on a monthly basis.

7.    JBS shall not have any legal or equitable interest in the funds in the Escrow Account unless and until an event of termination occurs as provided in this Settlement Agreement.

8.    If the Settlement Agreement is terminated as provided in this Settlement Agreement, the Escrow Agent shall, within ten (10) Business Days following receipt of written notice of such termination from Defendant's Counsel, return all monies then held in the Escrow Account (including any interest that has accrued) to JBS or as instructed by Defendant's Counsel; *provided* that, before returning the monies pursuant to this Section III.C.8, the Escrow Agent shall advise Defendant's Counsel of any outstanding Notice and Administrative Expenses and/or Post-Agreement Mediation Fees and Expenses that are due for payment and, upon the written consent of Defendant's Counsel (which consent shall not be unreasonably withheld), shall pay such expenses.

9.    After the Final Settlement Date, no portion of the Settlement Amount or Settlement Expense Amount shall revert to JBS.

10.    The Escrow Account and the funds it contains shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the Court's jurisdiction until such time as they shall be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

11.     Any dispute about payments to be made out of the Escrow Account before the Final Settlement Date will be submitted to the Mediator for final, binding resolution.

D.     **Qualified Settlement Fund**

1.     All necessary steps to enable the Escrow Account to be treated as a Qualified Settlement Fund for tax purposes shall be taken, including the timely filing by Class Counsel and/or its agents of all elections and statements required for tax purposes pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations, or published rulings now or hereafter enacted or promulgated, for all taxable years of the Escrow Account, beginning with the date of its establishment.  The Claims Administrator shall be the "administrator" of the Qualified Settlement Fund for tax purposes under Treas. Reg. §§ 1.460B-0 through 1.468B-5, shall file or cause to be filed on a timely basis any required federal, state, and local tax returns, and shall cause any taxes due on the income of the Qualified Settlement Fund to be paid from the Escrow Account.  The Settling Parties agree that the Escrow Account shall be treated as a Qualified Settlement Fund, as provided in Treas. Reg. §§ 1.468B-0 through 1.468B-5, from the earliest date possible, and hereby agree to any relation-back election required to treat the Escrow Account as a Qualified Settlement Fund from the earliest date possible.  In no event shall Defendant have any responsibility whatsoever for filing elections, other required statements, or tax returns, or for paying the costs associated therewith, any taxes due, or the expenses of notice or administration of the Escrow Account.  Class Counsel and Defendant's Counsel shall cooperate to the extent necessary to comply with this Section III.  Upon request by Class Counsel, JBS shall promptly provide the statement described in Treasury Regulation § 1.468B-3(e).

2.      Upon request by Defendant's Counsel, the Claims Administrator shall promptly provide to Defendant's Counsel all information requested in connection with (*i*) any tax returns that JBS or any other Releasee must file or (*ii*) any other report or filing that JBS or any other Releasee must make concerning the Settlement Amount or any portion of it.

E.      **Distribution of the Net Settlement Amount**

1.      If the proposed Settlement becomes Final, the Net Settlement Amount shall be distributed pursuant to such Plan of Allocation as the Court approves.

2.      No person or entity shall have any Claim against Lead Plaintiff, Class Counsel, the Claims Administrator, the Escrow Agent, or any of their agents, or against Defendant or any other Releasee (including Defendant's Counsel), relating to or arising out of any distributions or lack thereof made under any Court-approved Plan of Allocation, this Settlement Agreement, or orders of the Court.

3.      The Settling Parties understand and agree that, notwithstanding any other provision of this Settlement Agreement, a court-ordered or court-approved change to the Plan of Allocation shall not operate to modify, terminate or cancel this Settlement Agreement or affect the finality of the Approval Order and the Judgment or any other orders entered by the Court giving effect or pursuant to this Settlement Agreement.

4.      Development of the Plan of Allocation shall be exclusively the responsibility of Lead Plaintiff and Class Counsel; *provided* that the Plan of Allocation shall not provide any Class Member (including Lead Plaintiff) with an amount that is in excess of his, her or its recognized loss under the Plan of Allocation.

5.      Defendant, the other Releasees, and their respective counsel, including Defendant's Counsel, shall have no role in, responsibility for, or liability as to or in connection

with, and shall take no position on, (*i*) the Plan of Allocation, (*ii*) the form, substance, method, or manner of allocation, administration or distribution of the Net Settlement Amount, (*iii*) any tax liability that a Class Member might incur as a result of this Settlement Agreement, or (*iv*) the result of any action taken pursuant to this Settlement Agreement, the administration or processing of claims (including determinations as to the validity of Claim Forms), the amounts of claims or distribution of the Net Settlement Amount, or (except as set out above) the maintenance of the Escrow Account as a Qualified Settlement Fund.

6.    Class Members shall look solely to the Net Settlement Amount for settlement and satisfaction of all Released Class Claims and only to the extent expressly provided by this Settlement Agreement, the Court-approved Plan of Allocation, or an order of the Court.  Under no circumstances will any of the Settling Parties or any Releasee be responsible for the payment of any fees, costs, expenses or other funds associated with or arising out of the Settlement contemplated by this Settlement Agreement other than as provided herein.

7.    Any portion of the Net Settlement Amount that cannot be distributed pursuant to the Plan of Allocation (taking into account Section III.F.6) shall be distributed pursuant to the *cy pres* doctrine, with a beneficiary or beneficiaries to be agreed upon by the Settling Parties and approved by the Court.

F.    **Implementation of the Plan of Allocation**

1.    All cash distributions to Authorized Claimants shall be paid from the Net Settlement Amount pursuant to a Plan of Allocation approved by the Court.

2.    The Plan of Allocation is not a necessary term of this Settlement Agreement, and this Settlement Agreement is not conditioned on the approval of any particular plan of allocation.

3.      To receive a cash distribution from the Net Settlement Amount pursuant to any approved Plan of Allocation, a Class Member must be an Authorized Claimant pursuant to the procedures set out in this Settlement Agreement or by order of the Court.

4.      Unless otherwise authorized by the Court, each Class Member who wishes to receive a distribution from the Net Settlement Amount must complete and submit a Claim Form, as directed in the Individual Notice, the Summary Notice and the Claim Form.  The Claim Form must be postmarked or received no later than the date stated in the Claim Form, unless otherwise allowed by Class Counsel or the Court, must be sent to an address stated in the Claim Form, and must be accompanied by adequate supporting documentation as described on the Claim Form.

5.      The Claim Form must be executed subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

6.      The validity of each submitted Claim Form will initially be determined by the Claims Administrator in accordance with the Plan of Allocation approved by the Court.  The Claims Administrator shall advise the Class Member in writing if it determines to reject the claim.  Class Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive, in the interests of achieving substantial justice, what Class Counsel deems to be formal or technical defects in any Claim Forms submitted.  Class Counsel, its designees or agents, Lead Plaintiff, Defendant's Counsel, Defendant, the other Releasees, and their counsel shall not have any liability arising out of any such determinations.  Persons who timely submit a Claim Form that is deficient or otherwise rejected shall be afforded a reasonable time (at least fifteen (15) days) to cure such deficiency if it shall appear that such deficiency may be curable.

7.     If any Class Member whose claim has been rejected in whole or in part desires to contest such rejection, the Class Member must, within fifteen (15) days after the date of such rejection, submit to the Claims Administrator a notice and statement of reasons explaining the Class Member's grounds for contesting the rejection, along with any supporting documentation.  If a dispute concerning a claim cannot be otherwise resolved, Class Counsel shall thereafter present the request for review to the Court.  The administration of the Escrow Account and the Net Settlement Amount, and decisions on all disputed questions of law and fact concerning the validity of any Claim Form or regarding the rejection or amount of any claim, shall remain under the jurisdiction of the Court.  All Class Members and Settling Parties expressly waive trial by court or jury (to the extent any such right might exist) and any right of appeal or review as to the Court's determination.  Any Class Member pursuing a dispute shall be responsible for his, her or its own costs, including attorneys' fees, incurred in pursuing the dispute.

8.     The Net Settlement Amount shall not be distributed to Authorized Claimants until the Final Settlement Date has occurred.

9.     Unless otherwise ordered by the Court or otherwise provided for herein, any Class Member who fails to submit a valid and timely Claim Form shall be barred from receiving a distribution from the Net Settlement Amount, but shall nevertheless be bound by the Release and all proceedings, orders and judgments in the Action even if he, she or it has pending, or subsequently initiates, any litigation, arbitration, or other proceeding, or has any Claim, against any or all of the Releasees that is a Released Class Claim.

IV.    **NOTICE TO THE CLASS**

    A.    **Individual Notice**

        1.    Subject to the requirements of the Preliminary Approval Order, and in accordance with all applicable laws, Class Counsel shall cause the Claims Administrator to mail by first-class mail a copy of the Individual Notice and the Claim Form to all putative Class Members who can be identified through reasonable efforts, including by review of depositary institutions' records and any other inquiries conducted by the Claims Administrator.

        2.    The Claims Administrator will also post the Individual Notice on its website by no later than the date on which the first Individual Notices are mailed to potential Class Members.

        3.    JBS will use reasonable efforts to provide to the Claims Administrator whatever information it can obtain from Bank of New York Mellon or any transfer agent addressing the identity of record shareholders of Relevant Securities traded during the Class Period.  To the extent it is able to obtain any such information from any such entities, JBS shall provide it to the Claims Administrator within fourteen (14) days following the Execution Date.

    B.    **Summary Notice**

        1.    Subject to the requirements of the Preliminary Approval Order, and in accordance with all applicable laws, the Claims Administrator shall cause a copy of the Summary Notice to be published one time in each of *The Wall Street Journal* and *Investor's Business Daily,* as well as on the PRNewswire.

    C.    **CAFA Notice**

        1.    JBS shall cause notice to be provided to United States federal and state officials if and to the extent required by CAFA.

2.      The Settling Parties shall request a schedule for the Fairness Hearing that is consistent with the notice periods prescribed in CAFA.

D.      **Notice Costs**

1.      All expenses incurred in connection with the provision of the Individual Notice and the publication of the Summary Notice will be paid from the Settlement Expense Amount or, if the Settlement Expense Amount is unavailable, from the Settlement Amount.

2.      JBS shall be solely responsible for the costs associated with providing CAFA notice, if any.

V.      **CLAIMS ADMINISTRATOR**

A.      As provided in the Preliminary Approval Order, the Claims Administrator shall assist Lead Plaintiff and Class Counsel in administering and implementing the Settlement contemplated by this Settlement Agreement.  JBS shall cooperate in the administration of the Settlement Agreement to the extent reasonably necessary to effectuate its terms (but not including any acts that the Claims Administrator, Lead Plaintiff and/or Class Counsel are required to undertake pursuant to this Settlement Agreement).

B.      The Claims Administrator shall perform various tasks as directed by Class Counsel, including:  (*i*) printing and mailing the Individual Notice and Claim Form to potential Class Members, (*ii*) arranging for publication of the Summary Notice, (*iii*) posting the Individual Notice, the Claim Form and other documents relevant to the Settlement and the Action on the a website for the Settlement, (*iv*) answering written inquiries from potential Class Members and/or forwarding such inquiries to Class Counsel, (*v*) providing additional copies of the Individual Notice, upon request, to Nominees or putative Class Members, (*vi*) receiving and maintaining any requests for exclusion from the Settlement from putative Class Members, (*vii*) receiving and processing Claim Forms from Class Members, (*viii*) mailing or causing to be mailed to

33

Authorized Claimants their distributions under the Plan of Allocation, (*ix*) operating a toll-free telephone number with access to operators to answer inquiries from putative Class Members and/or to forward such inquiries to Class Counsel, and training staff members and operators about the proposed Settlement and the Plan of Allocation and (*x*) otherwise administering and implementing this Settlement Agreement.

      C.      As ordered by the Court in the Preliminary Approval Order, the Claims Administrator shall establish and staff with representatives knowledgeable about this Settlement Agreement and the Plan of Allocation a toll-free telephone number for responding to inquiries from potential Class Members about this Settlement Agreement and any issues relating to the Action.

      D.      Except as otherwise set out in this Settlement Agreement, all administration expenses associated with implementing the Settlement, including the Claims Administrator's fees and expenses, will be paid from the Settlement Expense Amount in the Escrow Account; *provided* that any such expenses in excess of the Settlement Expense Amount shall be paid from the Settlement Amount.

## VI.    COMMUNICATIONS REGARDING THE SETTLEMENT

      A.      Subject to Section VI.B below, no disclosure of the Settlement or its terms will be made by the Settling Parties, Class Counsel or Defendant's Counsel prior to the submission of the Settlement Agreement to the Court for preliminary approval unless the Court requires such disclosure prior to such submission.

      B.      Notwithstanding Section V.A above, nothing shall prevent Defendant from determining, in its sole discretion, to disclose the Settlement and/or its terms before the submission of the Settlement Agreement to the Court for preliminary approval or to make whatever disclosures it believes are required or appropriate, including to its regulators, stock

exchanges, attorneys, accountants and insurers; *provided* that Defendant shall obtain Class Counsel's advance approval to make any such disclosures other than disclosures to its regulators, stock exchanges, attorneys, accountants or insurers, which approval shall not be unreasonably withheld. If the Settlement Parties disagree about whether a disclosure is appropriate or otherwise warranted, they will submit the dispute to the Mediator for a final, binding decision.

C.      The Settling Parties side shall have the opportunity to review the other side's press release(s) (if any), and the Settling Parties shall have the opportunity to comment on the other side's press release(s) (if any).

D.      The Settling Parties shall cooperate in good faith to ensure that any media statements regarding the Settlement are balanced, fair, accurate and non-disparaging.

E.      The Settling Parties, Class Counsel and Defendant's Counsel agree that they will refrain from asserting that the Action was brought or defended in bad faith.

F.      Except as provided in the Individual Notice and the Summary Notice or in court filings in support of Court approval of this Settlement, the Settling Parties, Class Counsel and Defendant's Counsel agree that none of them will comment publicly on the merits of the Claims or defenses asserted in the Action except in the most general terms in the context of supporting or commending the Settlement terms.

## VII.    REQUESTS FOR EXCLUSION

A.      Any putative Class Member who wishes to be excluded from the Class must mail by first-class mail, or otherwise deliver, a written request for exclusion to the Claims Administrator at the address provided in the Individual notice or the Summary Notice, which exclusion request must be postmarked or received no later than thirty-five (35) days before the Fairness Hearing, or as the Court may otherwise direct. A list of the persons and entities who

have validly and timely requested exclusion from the Class shall be provided by the Settling Parties to the Court at or before the Fairness Hearing.

B.     A potential Class Member's request for exclusion must include the following information:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) a statement that the potential Class Member wishes to request exclusion from the Class in *Murphy v. JBS S.A.*, Case No.:  1:17-cv-03084-ILG-RER, (*vi*) the number of shares of Relevant Securities purchased or otherwise acquired and/or sold during the Class Period, (*vii*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*viii*) the date of each such transaction involving each such Relevant Security, (*ix*) account statements verifying all such transactions and/or the number of Relevant Securities still held (if any) and (*x*) the reason(s) why the Class Member is requesting exclusion.

C.     Unless otherwise ordered by the Court, any Class Member who does not submit a timely written request for exclusion as provided by this Section VII shall nevertheless be bound by the Release and by all proceedings, orders and judgments in the Action, even if he, she or it has a pending or subsequently initiates litigation, arbitration, or any other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Released Class Claims.

D.     Lead Plaintiff agrees that it and its Affiliates will not request exclusion from the Class or the Settlement.

**VIII.   OBJECTIONS TO SETTLEMENT**

A.     Any Class Member who wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, to the Attorneys' Fees and Expenses Application and/or the Incentive Award Application must both serve on Class Counsel and Defendant's Counsel and file with the Court a statement of his, her, or its objection(s); *provided however*, that a potential Class Member who

requests exclusion from the Class shall not be entitled to submit an objection. Any such objection must be postmarked or received by Class Counsel, Defendant's Counsel and the Court by no later than thirty-five (35) days before the Fairness Hearing, or as the Court may otherwise direct.

B.    The Class Member's statement of objection shall state the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection. In addition to the reason(s) for the objection, an objection must also include the following information about the Class Member: (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) number of shares of Relevant Securities purchased or otherwise acquired and/or sold during the Class Period, (*vi*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*vii*) the date of each such transaction involving each such Relevant Security and (*viii*) account statements verifying all such transactions and/or the number of Relevant Securities still held (if any).

C.    Any Class Member may file an objection on his, her or its own, or through an attorney hired at his, her or its own expense. If a Class Member hires an attorney to represent him, her or it in connection with filing an objection, the attorney must both serve on Class Counsel and Defendant's Counsel and file with the Court a notice of appearance. Subject to the requirements of the Preliminary Approval Order, any such notice of appearance must be postmarked or received by Class Counsel, Defendant's Counsel and the Court by no later than thirty-five (35) days before the Fairness Hearing, or as the Court may otherwise direct.

D.    Any Class Member who files and serves a written objection pursuant to this Section – and, unless otherwise ordered by the Court, only such Class Members – may appear at

the Fairness Hearing, either in person or through counsel hired at the Class Member's expense, to object to the fairness, reasonableness or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, to the Attorneys' Fees and Expenses Application or to the Incentive Award Application.  Class Members or their attorneys intending to make an appearance at the Fairness Hearing must both serve on Class Counsel and Defendant's Counsel and file with the Court a notice of intention to appear.  Any such notice must be postmarked or received by Class Counsel, Defendant's Counsel and the Court by no later than thirty-five (35) days before the Fairness Hearing, or as the Court may otherwise direct.

E.      Any Class Member who fails to comply with any of the provisions of this Section VIII shall waive and forfeit any and all rights he, she or it might otherwise have to appear separately at the Fairness Hearing and/or to object to this Settlement Agreement, the Plan of Allocation, the Attorneys' Fees and Expenses Application or the Incentive Award Application, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments in the Action.

## IX.     RELEASE AND WAIVER, AND ORDER OF DISMISSAL

### A.     **Release and Waiver**

1.      Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.A.4 below, on and after the Final Settlement Date, Lead Plaintiff and all other Class Members (whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Class Member), on behalf of themselves and the other Releasors, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released relinquished, settled and discharged:

a.      all Released Class Claims against each and every one of the Releasees;

b.      all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense or settlement of the Action, (*ii*) this Settlement Agreement or its implementation, (*iii*) the Settlement terms and their implementation, (*iv*) the provision of notice in connection with the proposed Settlement and/or (*v*) the resolution of any Claim Forms submitted in connection with the Settlement; and

c.      all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Class Counsel or any other counsel representing Lead Plaintiff or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in this Settlement Agreement.

2.      Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.A.4  below, on and after the Final Settlement Date, each and every Releasee, including Defendant's Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released, relinquished, settled and discharged each and all Releasors, including Class Counsel, from any and all Released Releasees' Claims, except to the extent otherwise specified in this Settlement Agreement.

3.       Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section IX.A.4 below, on and after the Final Settlement Date, Class Counsel and any other counsel representing Lead Plaintiff or any other Class Member in connection with or related in any manner to the Action, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by, through or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released, relinquished, settled and discharged JBS, Defendant's Counsel and all other Releasees from any and all Claims that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense or settlement of the Action, (*ii*) this Settlement Agreement or its implementation or (*iii*) the Settlement terms and their implementation.

4.       Notwithstanding Sections IX.A.1, IX.A.2, and IX.A.3 above, nothing in the Approval Order or the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of this Settlement Agreement, the Approval Order or the Judgment.

5.       The releases and waivers contained in this Section were separately bargained for and are essential elements of this Settlement Agreement.

B.       **Judgment and Order of Dismissal**

1.       The Settling Parties will seek and obtain from the Court an Approval Order and a Judgment as further described in Section XIII below.

40

## X.    ATTORNEYS' FEES AND EXPENSES

A.    Class Counsel may submit an Attorneys' Fees and Expenses Application to the Court for approval in which they seek an Attorneys' Fees and Expenses Award as a percentage of the Settlement Amount of $5,466,600 plus the Settlement Expense Amount and the Pre-Agreement Mediation Fees and Expenses.  The Settling Parties acknowledge that these amounts represent the total benefit received by the Class under this Settlement Agreement.

B.    The Attorneys' Fees and Expenses Award will be paid to Class Counsel as set out in this Section X.

C.    Any Attorneys' Fees and Expenses Award shall be paid to Class Counsel from the Settlement Amount within five (5) Business Days following the Final Settlement Date.

D.    No Releasee shall be liable or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person or entity (including Lead Plaintiff and Class Counsel), directly or indirectly, in connection with the Action or this Settlement Agreement, except as expressly provided for in this Settlement Agreement.

E.    No Releasee shall have any responsibility whatsoever in connection with the allocation of the Attorneys' Fees and Expenses Award between or among any counsel purporting to represent any Class Member, or any counsel asserting a right to receive a portion of the Attorneys' Fees and Expenses Award or any other amount of attorneys' fees or expenses in connection with this Action.

## XI.    INCENTIVE AWARD

A.    The Lead Plaintiff may submit an Incentive Award Application to the Court for approval, which Incentive Award Application will take into account the time spent by the Lead Plaintiff in pursuing the Action (including, without limitation, the time spent consulting with Class Counsel and reviewing documents, filings and factual materials in the Action).

B.      Any Incentive Award made to Lead Plaintiff shall be paid to Lead Plaintiff from the Settlement Expense Amount or, if the Settlement Expense Amount is unavailable, from the Settlement Amount five (5) Business Days after the Final Settlement Date.

## XII.   PRELIMINARY APPROVAL

A.      Within five (5) days following the Execution Date, Class Counsel and Defendant's Counsel shall apply to the Court for entry of the Preliminary Approval Order.

B.      Lead Plaintiff and Defendant stipulate to the certification of the Class and certification of Lead Plaintiff as representative of the Class solely for the purpose of this proposed Settlement.  If the proposed Settlement is not approved by the Court or is not consummated for any other reason, Defendant reserves the right to oppose certification of the Class, or any other class, and to oppose certification or appointment of Lead Plaintiff as representative of, and Class Counsel as counsel for, the Class, or any other class, in the Action.

## XIII.  FINAL APPROVAL AND FINAL JUDGMENT

A.      If the Court approves the Settlement contemplated by this Settlement Agreement, Class Counsel and Defendant's Counsel shall jointly request that the Court enter the Approval Order and the Judgment.

## XIV.   MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT

A.      The terms and provisions of this Settlement Agreement may be amended or expanded by written agreement of the Settling Parties; *provided however*, that, after entry of the Approval Order and the Judgment, Class Counsel, on behalf of Lead Plaintiff and the Class, and Defendant's Counsel, on behalf of Defendant, may by written agreement effect any amendments, modifications or expansions of this Settlement Agreement and its implementing documents (including all exhibits to this Settlement Agreement) without notice to or approval by the Court only if such changes are not materially inconsistent with the Court's Approval Order and

Judgment and do not materially limit the rights of Class Members under this Settlement Agreement.

B.    **Mutual Termination Rights**

1.    Subject to Section XV.B.2 below, this Settlement Agreement will terminate at the sole option and discretion of Defendant and/or Lead Plaintiff (on behalf of itself and the Class) if (*i*) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that the terminating Settling Party reasonably and in good faith determines is material, including the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class, the Complete Bar Order, the permanent injunction and/or the terms of the Release, or (*ii*) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Preliminary Approval Order, the Approval Order, or the Judgment that the terminating Settling Party reasonably and in good faith believes is material.  If the Settling Parties disagree about whether a change is material, they will submit the dispute to the Mediator for a final, binding decision.  In any of the above circumstances, the terminating Settling Party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section, no later than thirty (30) days after receiving actual notice of the event prompting the termination.

2.    Notwithstanding the preceding Section XIV.B.1, neither Lead Plaintiff nor Class Counsel may terminate this Settlement Agreement on the basis of the Court's order(s) addressing the Attorneys' Fees and Expenses Application and/or the Incentive Application, or on the basis of modification of the Attorneys' Fees and Expenses Award and/or the Incentive Award by any appellate court(s).

C. **Defendant's Termination Rights**

1.    In addition to having the right to terminate this Settlement Agreement as provided in Section XIV.B above and without limiting any other rights under this Settlement Agreement, (*i*) by no later than two (2) days before the Fairness Hearing, Defendant may unilaterally withdraw from and terminate this Settlement Agreement if requests for exclusion are received from potential Class Members in accordance with the Termination Threshold as set out in the Supplemental Agreement.

2.    The Claims Administrator shall promptly notify Class Counsel and Defendant's Counsel of all requests for exclusion submitted by potential Class Members and shall also provide Class Counsel and Defendant's Counsel with copies of any such requests for exclusion and the supporting information and documentation submitted by such persons or entities.

D. **Effect of Termination**

1.    If this Settlement Agreement is terminated in accordance with any provision of this Section XIV, the Settlement Agreement shall be withdrawn from, terminated, and deemed to be null and void, and the provisions of Section XV of this Settlement Agreement shall apply.

XV.    **GENERAL MATTERS AND RESERVATIONS**

A.    If an option to withdraw from and terminate this Settlement Agreement arises under this Settlement Agreement, (*i*) neither Defendant nor Lead Plaintiff will be required for any reason or under any circumstance to exercise that option, and (*ii*) if either Defendant or Lead Plaintiff exercises the option to withdraw from or terminate the Settlement, the terminating Settling Party shall exercise that option in good faith.

B.      If (*i*) this Settlement Agreement does not become Final or is otherwise terminated pursuant to the terms hereof, (*ii*) the Releases set out in Section IX do not become effective or (*iii*)  the Settlement does not become Final by operation of law, then:

1.      This Settlement Agreement shall be null and void and shall have no force or effect, and no party to this Settlement Agreement shall be bound by any of its terms, except for the terms set out in this Section XV.B;

2.      This Settlement Agreement, all of its provisions, and all negotiations, statements, and proceedings relating to it (including the agreement in principle reached on August 22, 2018) shall be without prejudice to the rights of Defendant, any other Releasee, Lead Plaintiff, or any other Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement, except with respect to the payment from the Settlement Expense Amount of such Notice and Administrative Expenses and/or Post-Agreement Mediation Fees and Expenses that have been actually expended or incurred as described in Section II above; *provided* that, regarding any Post-Agreement Mediation Fees and Expenses, Lead Plaintiff shall reimburse JBS for one-half of such expenses;

3.      Releasees expressly and affirmatively reserve all defenses, motions, and arguments as to all Claims that have been or might later be asserted in the Action, including any argument that the Action may not be litigated as a class action;

4.      Lead Plaintiff and all other Class Members expressly and affirmatively reserve all motions as to, and arguments in support of, all Claims that have been or might later be asserted in the Action, including any argument concerning class certification;

5.      Neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence for any purpose whatsoever, with the exception of enforcement of this Section XV.B;

6.      The terms and provisions of the Confidentiality Agreement as set out in Exhibit G shall continue in full force and effect, and the use of information obtained in Confirmatory Discovery shall be governed by such Confidentiality Agreement;

7.      All monies in the Escrow Account shall be returned to JBS as set out in Section III above; and

8.      Except as specifically provided herein, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees or expenses.

C.      All of the exhibits attached to this Settlement Agreement are incorporated by reference as though fully set forth herein.

D.      The Settling Parties intend that the Settlement Agreement shall be a final and complete resolution of all disputes that were, could have been, or could be asserted as to the Released Class Claims and the Released Releasees' Claims.  Accordingly, the Settling Parties agree not to assert in any forum that any conduct of Lead Plaintiff and/or Defendant, or either of them, in connection with this Action, the Settlement of this Action, or any of the Released Class Claims or Released Releasees' Claims was in bad faith or was unreasonable.  No Settling Party shall assert any Claim that any other Settling Party violated Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Action.

E.      The Settling Parties agree that the amount paid and the other terms of the Settlement Agreement were negotiated at arm's length in good faith by the Settling Parties and

reflect an agreement that was reached voluntarily, after consultation with experienced legal counsel and under the auspices of the Mediator.

   F.  Each Settling Party's counsel signing this Settlement Agreement represents that he or she is authorized to enter into this Settlement Agreement on behalf of his or her clients.

   G.  Lead Plaintiff, through its duly authorized representative, represents that it (*i*) has agreed to serve as representative of the Class proposed to be certified herein, (*ii*) has consulted with Class Counsel about the Action, this Settlement Agreement and the obligations of a representative of the Class, and (*iii*) will remain in and not request exclusion from the Class and will serve as a representative of the Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that Lead Plaintiff cannot represent the Class.

   H.  This Settlement Agreement and the Supplemental Agreement set forth the entire agreement among the Settling Parties as to their subject matter and may not be altered or modified except by a written instrument executed by all Settling Parties' counsel.  Lead Plaintiff and Defendant expressly acknowledge that there are no agreements, arrangements, or understandings among or between them concerning the subject matter of this Settlement Agreement other than those expressed or referred to in this Settlement Agreement and the Supplemental Agreement, and no Settling Party has relied upon any representation or warranty not set forth expressly herein or in the Supplemental Agreement; *provided further* that the terms of the Settlement Agreement supersede the agreement in principle reached on August 22, 2018.

   I.  This Settlement Agreement shall be governed by and interpreted according to the laws of the State of New York, excluding its conflict-of-laws provisions.

J.       Any action arising under or to enforce this Settlement Agreement or the Supplemental Agreement shall be commenced and maintained only in the Court, which shall retain continuing, exclusive jurisdiction over all matters relating to the Settlement other than those specifically reserved for resolution by the Mediator.

K.       Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to the other, notice shall be provided by facsimile, email, and/or next-day (excluding Saturday, Sunday and Legal Holidays) express-delivery service as follows and shall be deemed effective upon such facsimile or email transmission or delivery to the facsimile number, email address, or street address, as the case may be, below:

1.       If to Defendant, then to:

Ralph C. Ferrara
rferrara@proskauer.com
Ann M. Ashton
aashton@proskauer.com
Proskauer Rose LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, D.C. 20004
Telephone: (202) 416-6800
Facsimile: (202) 416-6899

Jonathan E. Richman
jerichman@proskauer.com
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile:  (212) 969-2900

2.       If to Lead Plaintiff, then to:

Nicholas I. Porritt
nporritt@zlk.com
Adam M. Apton
aapton@zlk.com

Levi & Korsinsky, LLP
55 Broadway 10th Floor
New York, NY  10006
Telephone: 212-363-7500
Facsimile:  212-363-7171

L.      All time periods set forth herein shall be computed in calendar days unless

otherwise expressly provided.  In computing any period of time prescribed or allowed by this

Settlement Agreement or by order of the Court, the day of the act, event, or default from which

the designated period of time begins to run shall not be included.  The last day of the period so

computed shall be included, unless it is a Saturday, a Sunday, or a Legal Holiday, or, when the

act to be done is the filing of a paper in Court, a day on which weather conditions or other

conditions have made the office of the Clerk of Court inaccessible, in which event the period

shall run until the end of the next day that is not one of the aforementioned days.

M.      The Settling Parties reserve the right, subject to the Court's approval, to make any

reasonable extensions of time that might be necessary to carry out any of the provisions of this

Settlement Agreement.

N.      All Setting Parties agree that this Settlement Agreement and the Supplemental

Agreement were drafted by counsel for the Settling Parties at arm's length and that no parol or

other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of

the Settling Parties, or their counsel, or the circumstances under which the Settlement Agreement

and the Supplemental Agreement were made or executed.  Nor shall there be any presumption

for or against any Settling Party that drafted all or any portion of this Settlement Agreement or

the Supplemental Agreement.

O.      This Settlement Agreement, offer of this Settlement Agreement, and compliance

with this Settlement Agreement shall not constitute or be construed as an admission by any of the

Releasees of any wrongdoing or liability.  This Settlement Agreement is to be construed solely as

49

a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Class Claims.  In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in the Action, any other action, or any judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Settlement Agreement.  Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including Defendant, or as a waiver by Defendant of any applicable defense.

P.      No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members or to any of the Settling Parties is being given or will be given by Defendant's Counsel and/or Class Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement.  Class Members will be directed to consult their own tax advisors regarding the tax consequences of the proposed Settlement and any tax reporting obligations they might have with respect to it.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

Q.      The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to use good faith in resolving any disputes that might arise in the implementation of the terms of this Settlement Agreement.

R.    The Settling Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

S.    This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or email in electronic format (including .pdf format) shall be fully and legally binding on a Settling Party.

T.    All Releasees who are not Settling Parties are intended third-party beneficiaries who are entitled as of the Final Settlement Date to enforce the terms of the Release set forth in this Settlement Agreement.

Agreed to as of this 19th day of December, 2018.

Nicholas I. Porritt
Adam M. Apton
Levi & Korsinsky, LLP
55 Broadway 10th Floor
New York, NY  10006
Telephone:  (212) 363-7500
Facsimile:  (212) 363-7171

**Counsel for Lead Plaintiff  GWI Enterprise Ltd. and the Class**

Ralph C. Ferrara
Ann M. Ashton
Proskauer Rose LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, D.C. 20004
Telephone:  (202) 416-6800
Facsimile:  (202) 416-6899

Jonathan E. Richman
Proskauer Rose LLP
Eleven Times Square
New York, New York  10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900

**Counsel for Defendant JBS S.A.**